EMMA C. SATTER v. HATTIE TURNER AND OTHERS.
HAROLD YOERG AND ANOTHER, COPARTNERS d.b.a.
YOERG'S DAIRY, AND ANOTHER, APPELLANTS.

100 N. W. (2d) 660.

January 8, 1960—Nos. 37,681, 37,771.

*Quinlivan, Quinlivan & Quinlivan,* for appellants.
*Gordon Rosenmeier* and *John E. Simonett,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

One of the defendants in this case took two appeals. First, he appealed from the order granting judgment for the plaintiff notwithstanding the verdict and granting a new trial if the order granting judgment notwithstanding was reversed, vacated, or set aside on appeal. Second, he appealed from the judgment entered in favor of plaintiff pursuant to the order granting judgment notwithstanding.

The action arises out of a head-on collision between an automobile owned and driven by plaintiff, Emma C. Satter, and one owned by defendant Hammond Turner and driven by his wife, defendant Hattie Turner. Defendants Harold Yoerg and Stanley Yoerg are copartners operating under the name of Yoerg's Dairy. Defendant Barney Zak is employed by them as a delivery man and was driving a milk truck owned by them. There is no issue as to the liability of the Yoerg copartners if Zak is liable. They will all be referred to herein as defendant Zak.

This case is here on appeal for the second time. At the first trial the jury found Zak and the Turners negligent and their negligence the proximate cause of the accident. Plaintiff's damages were assessed at $50,000. On appeal this court ordered a new trial as to Zak on the ground that there was error in the charge as to the slow-speed statute. Satter v. Turner, 251 Minn. 1, 86 N. W. (2d) 85, 66 A. L. R. (2d) 1178. The new trial was ordered on two questions, viz.: (1) Was Zak negligent? (2) Was his negligence a proximate cause of the accident? The amount of the award was left undisturbed.

At the second trial the jury was informed that the amount of the damages was not their concern and that it had already been determined that Turners' negligence in the operation of their automobile was a proximate cause of plaintiff's injuries. At that trial, the jury brought in a general verdict in favor of Zak.

The collision occurred on U. S. Highway No. 371 near the city limits at the north of Little Falls on September 1, 1954, about 3:30 p. m.

The day was clear and the pavement dry. Highway No. 371 is a concrete-surfaced arterial highway running in a general north and south direction between Little Falls and Brainerd. The paved portion is 24 feet wide, with 8-foot, unpaved shoulders on both sides.

In the vicinity of the collision, Riverview Avenue, also a concrete highway, enters upon Highway No. 371 from the northwest at an angle of about 45 degrees. At the intersection Riverview "fans out" to a width of 69 feet. The distance from the north edge of the concrete to the edge of the traveled portion of the gravel on the north side of Riverview measures 21 feet, which according to plaintiff's brief widened the traveled portion of Riverview that much.[1]

A standard stop sign is located on the south side of Riverview Avenue about 32 feet from the west edge of the pavement on Highway No. 371. From this stop sign an unobstructed view is available both to the north and south for a distance of more than 800 feet.

Plaintiff testified that she was driving south on Highway No. 371 on the right-hand side of the centerline and about a "split second" before the collision she saw the Zak truck traveling north in its own lane of travel, and that the northbound Turner car came directly from behind the truck into her lane of travel. She did not remember seeing the truck at any time except when it was traveling north in its own lane on Highway No. 371.

Defendant Hattie Turner testified by deposition that she was driving north at a speed of not more than 30 miles per hour; that when only 50 feet south of the Riverview intersection she first observed the Zak truck. It had not yet entered the highway but was "fixing to enter" and she honked her car horn. It was her claim that the truck made a left turn in front of her car to go north and she put on the brakes and swung over into the left lane. At one point she claimed that she brought her car to a complete stop before the collision occurred.

Zak argues that from a point 50 feet south of the intersection where Mrs. Turner said she was when she first saw the truck "fixing to enter" the highway to the north limits of the intersection is a distance

---

[1]Plaintiff cites M. S. A. 169.01, subd. 31, to the effect that a roadway includes that portion of a highway "ordinarily used for vehicular travel."

of 119 feet; that from a point 50 feet south of the intersection to a point 120 feet north of the north limits of the intersection where the collision occurred is a distance of 239 feet; that at no time was there any contact between the Turner car and the truck; and that the collision occurred at a point in the southbound lane when Mrs. Turner, moving at a speed of only 30 miles per hour, had traveled 239 feet after she first saw the truck about to enter the highway. It is Zak's contention that Mrs. Turner's testimony presents a fantastic account which is not worthy of belief.

On the other hand plaintiff maintains in her brief that Mrs. Turner's account makes good sense. She agrees that the latter's estimate of first seeing Zak about to enter the intersection when she was about 50 feet from it was too short as she had to be farther back—about 150 to 250 feet—when she first saw the truck about to enter the highway.

Plaintiff claims that this proves the testimony of Robert Madsen, one of the witnesses, now 15 years of age, who was 12 at the time of the accident. At the first trial he made no estimate of the distance of the Turner car from the intersection when the truck reached the pavement of the highway. At the second trial he put it somewhere between the 40-miles-per-hour sign south of the intersection and three-quarters of a block south of the intersection when half the length of the truck was on the highway and turning north. From Robert's testimony and from measurements in the record plaintiff argues that the Turner car was from 90 to 250 feet from the south edge of the intersection when the front of Zak's truck was about 8 feet into the intersection, and that Zak had to drive 70 feet before the rear end of his truck would be north of the north boundary of the intersection.

Plaintiff refers to numerous other measurements in the record and reasons that the important part of Mrs. Turner's testimony is not her estimate of 50 feet but her realization of the certainty of a collision with the truck if she did not turn.

Mrs. Ford, who was riding in a car driven by her brother, Dean Woullet, which was traveling about two car lengths behind the Turner automobile at about 30 miles per hour, testified that she did not see the truck enter on Highway No. 371 but saw it only as it was going north in the proper lane. She said that when the Turner car turned out

to the left to pass the truck it increased its speed and she saw no brake lights go on on it.

Dean Woullet corroborated his sister's testimony stating that he was driving about 30 miles per hour about two car lengths behind the Turner car; that he saw it suddenly increase its speed to pass the truck which was in front of it; and that the truck was going north in the right lane but he did not see it enter Highway No. 371 nor did he at any time observe the Turner car slacken its speed.

Zak testified that he proceeded on Riverview and stopped at the stop sign 32 feet west of the edge of Highway No. 371. He claims that after coming to a complete stop he looked or glanced to the north and saw what later proved to be the plaintiff's car on the other side of the Dairy Queen[2] coming south on the highway. He was unable to estimate the speed of the approaching car but thought it was probably going 40 miles an hour. Zak then looked to his right and saw what proved to be the Turner car, 500 or 600 feet away coming north on Highway No. 371 but said there was no car following it. At one place in his testimony he said he just looked or glanced at it as he was shifting at the time but later he said he had already shifted when he observed the car. While he made no estimate of the speed of the approaching car at that time he later estimated it at about 30 miles per hour.

He said that after making these observations he started his truck and proceeded into the intersection at about 5 miles an hour, although he did not look at the speedometer. At another place in his testimony he said that his truck was going 2 to 3 miles an hour from a point back at the stop sign, as he moved toward Highway No. 371.

In any event he claimed that after he left the stop sign he began to turn toward the northbound course of Highway No. 371 but did not look again to see the location of the approaching Turner car, except that he knew it was back of him, but did not know how close. He crossed the southbound lane of Highway No. 371, intending to move in front of the Turner car and to get across before the Satter car got there. As he came from the stop sign, moving in a general northeasterly

---

[2]In the trial Fred Riddle, a police officer, testified that the Dairy Queen was approximately 824 feet from the intersection.

direction, Zak said he glanced again and saw the Satter car coming up by the Dairy Queen. He was then asked on cross-examination under the rules:

"Q. You could have stopped without entering the highway at the moment you saw the Ford, the on-coming Satter car?

"A. Yes, sir.

"Q. There was no reason why you couldn't have stopped?

"A. No.

"Q. And if you had stopped your car at the spot you were she would have passed you in a matter of seconds?

"A. Yes, sir.

"Q. In other words, if you had waited a matter of seconds that car as far as you could see would have gone by you?

"A. Yes, sir."

After getting on Highway No. 371 Zak said that he shifted gears and picked up speed to 10 or 12 miles an hour as he wanted to get ahead of the Turner car into the northbound lane of traffic. Somewhere north of the intersection, as he straightened out his truck, he saw the Satter car approaching close to him but did not look in his rearview mirror to see where the Turner car was, except that he knew it was coming at least twice as fast as he was going. He admitted that at that time had he looked in the rearview mirror he could have seen the Turner car rapidly approaching and could have gotten on the shoulder so that the road would have been clear for it. He said he knew that it was going to be pretty close to the intersection when he got straightened out but "I didn't think it would be as close as that." When asked if he knew when he got straightened out that either the truck or Turner car would have to do something he answered "No," but said that he knew it was going to have to slow up or hit or pass his truck.

Zak testified that just as plaintiff's car passed him he heard the crash of the collision between the Turner and Satter cars. While the collision occurred just behind his truck, he did not see it nor did he see the Turner car move on to the southbound lane or give it any signal to slow up.

After he heard the crash, Zak stopped the truck and walked back

to the two cars involved in the accident. He heard someone say they were hurt and he started to go to the Dairy Queen to call for an ambulance but when he got there he heard the siren approaching and did not go back to the scene of the accident.

The questions raised on appeal are: (1) Were the defendants negligent as a matter of law and was the negligence as a matter of law a proximate cause of the collision? (2) Having granted plaintiff's motion for judgment notwithstanding the verdict, was the trial court justified in granting plaintiff a new trial in the event its order granting the judgment notwithstanding the verdict is reversed, vacated, or set aside?

Appellant assigns as error that the court erred in setting aside the verdict of the jury; in adjudging Zak negligent as a matter of law; in adjudging his negligence to be the proximate cause of the collision; in granting plaintiff judgment notwithstanding the verdict; and in granting a new trial.

■ The trial court stated in its order:

"It was then made to appear to this Court that plaintiff's motion was well founded; that the verdict herein is not justified by the evidence; that the verdict herein is contrary to law; that it was error to refuse to instruct the jury that defendants were negligent as a matter of law; that it was error to refuse to instruct the jury that defendants' said negligence was as a matter of law the proximate cause of plaintiff's injuries, and that it was error to deny plaintiff's motion for a directed verdict."

The court took the position that when Zak stopped for the sign at a point 32 feet from the west edge of Highway No. 371, shifted gears, and put his truck in motion to enter upon and travel a substantial distance along a curved arc on the right-of-way before reaching the westerly edge, the southbound Satter car and northbound Turner car were sufficiently close to present an immediate hazard to a truck of the type then operated by Zak.[3] The court concluded that Zak was

---

[3]The record shows that the truck was a Chevrolet milk truck with four speeds forward, a straight front, and about as long as an ordinary automobile. It could be driven from either a standing or sitting position.

negligent as a matter of law and that his negligence was the proximate cause of the collision.

It is Zak's claim that the second trial presented issues for the jury as to his alleged negligence and proximate cause and that the trial court properly submitted these fact issues to the jury. He argues that, the jury having returned a verdict for him, the record does not justify holding him negligent and his negligence a proximate cause of the accident as a matter of law so as to grant plaintiff judgment notwithstanding the verdict.

Plaintiff contends that Zak was negligent as a matter of law and that his negligence had two aspects—failure to keep a proper lookout and failure to yield the right-of-way. As to lookout she argues that Zak's testimony can leave no doubt that reasonable men would be of one opinion—that he was guilty of negligence in failing to keep a proper lookout. She further claims that it appears from his testimony that the Satter and Turner cars were on the highway, one coming from each direction, and that Zak knew that he was going to enter the through highway between those two approaching cars. Under those circumstances she contends that he had a duty to keep a proper lookout and yield the right-of-way to either or both cars if they were approaching so close as to constitute an immediate hazard of a collision if each continued on the same course at the same speed. She therefore maintains that Zak was negligent under the very law of this case, quoting from Satter v. Turner, 251 Minn. 1, 7, 86 N. W. (2d) 85, 90, 66 A. L. R. (2d) 1178, when this court said:

"* * * in maintaining a proper lookout, it was his duty to do so at a time when traffic that would constitute an immediate hazard, *at the time he entered the intersection,* could be observed. It was not enough that he determined whether approaching traffic would constitute an immediate hazard when he was some distance back from the intersection. In order to comply with this requirement of our statute, it was his duty to look for approaching traffic at a time when it could do some good."

See, also, City of Kalamazoo v. Priest, 331 Mich. 43, 49 N. W. (2d) 52; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

It is plaintiff's position that Zak, according to his own admissions,' did none of the things the law says he should have done and that there is no dispute or factual inconsistency whereby reasonable men could differ as to what happened. She calls our attention to what she terms important differences in his testimony in the first and second trials. For example, she points out that at the first trial the manner in which Zak made his left turn and the place on Riverview from which he entered Highway No. 371 were not developed but that he gave the impression that he successfully completed his left turn, was over in the northbound lane, and drove about 150 feet from the intersection before the accident happened behind him. At the second trial Zak testified that in making the left turn from Riverview to go onto Highway No. 371 he did not complete his turn within the intersection but outside, at some distance to the north. Plaintiff argues that this means that Zak did not stay in his right-hand lane of Riverview but he cut into the left-hand lane of Riverview so that he entered Highway No. 371 either from the left-hand lane or from the traveled portion of the shoulder extending 21 feet north of the concrete slab. In other words she contends that when he entered Highway No. 371 he was close to the north edge of the intersection facing northeast; that it was only when he got straightened out from a left-hand turn that the Satter car went from behind and the collision occurred. She maintains that it conclusively appeared from the evidence that Zak instead of having driven 150 feet down the highway had only just completed his left turn and got into his northbound lane when the collision occurred.

Plaintiff further argues that, although Zak's negligence as to lookout is enough, the evidence equally establishes Zak's failure to yield the right-of-way as a matter of law. It is her position that Zak's duty to yield the right-of-way means that he must yield not only to a car with which he will collide or a car already in the intersection, but also to a car on the arterial highway which presented an immediate potential hazard of a collision. She contends that a driver may not enter the highway if his presence will create a hazard and that he is not permitted to take a "close chance," citing Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320. That case differs in detail from the instant case as

it involved an intersection collision between the plaintiff's and defendant's cars. We said there that generally the issues of negligence and contributory negligence in highway intersection accidents are for the jury. In the case at bar Zak testified that when he stopped at the stop sign he looked to the north and saw an approaching car (Satter) beyond the Dairy Queen, about 824 feet away. He then looked and saw another car (Turner) approaching from the south, 500 to 600 feet away. After making these observations he started his truck and proceeded onto the highway. Whether either of those approaching cars presented an immediate potential hazard at the time Zak entered the intersection presented a jury issue.

In Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649, we said that whether a driver is justified in assuming an approaching vehicle will stop or slow down for him is ordinarily a question for the jury.

In connection with plaintiff's claim that Zak's negligence was a proximate cause of the accident as a matter of law which was the cause of her injury, she contends that if Zak had looked for the whereabouts of the Turner car seven seconds after he had taken his only look he would not have entered the highway and the accident would not have happened. She maintains that Zak's own testimony not only establishes his negligence as a matter of law but establishes his negligence as a proximate cause of the accident as a matter of law.

A motion for a judgment notwithstanding the verdict must be governed by the same rules which govern the court in passing upon a motion for a directed verdict. See, Rule 50.02(1) of Rules of Civil Procedure; MacKay v. Costigan (7 Cir.) 179 F. (2d) 125. A motion for a directed verdict, which by its very nature accepts the view of the entire evidence most favorable to the adverse party and admits the credibility of the evidence in his favor and all reasonable inferences to be drawn therefrom, should be granted only in those unequivocal cases where, in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where it would be contrary to the law applicable to the case. Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243.

It is well settled that if, in viewing the evidence as a whole in the light most favorable to the party against whom the verdict was directed, different persons could reasonably come to different conclusions a motion for a directed verdict should have been denied. Brady v. Kroll, 244 Minn. 525, 70 N. W. (2d) 354; Village of Plummer v. Anchor Cas. Co. 240 Minn. 355, 61 N. W. (2d) 225.

It is our opinion in the instant case that reviewing the record in its entirety the evidence presented a jury issue as to Zak's negligence, and, if he was negligent, as to whether it was the proximate cause of the accident. Considering the testimony in the light most favorable to Zak, as we are compelled to do, we have a situation where before he came onto the highway he said he glanced to the left and saw the Satter car approaching from beyond the Dairy Queen. (This was shown to be over 800 feet away.) He then claims that he glanced to the right and saw the Turner car 500 or 600 feet away coming in the opposite direction. The view was unobstructed both ways. This court has already stated that due care in looking is not measured by the number of times one looks; there is no rule of law requiring the driver who has looked effectively once to look again, but whether he was negligent in failing to do so is for a jury to decide. Kolatz v. Kelly, *supra,* and cases cited.

It is therefore our opinion that the trial court erred in granting judgment notwithstanding the verdict under the record here.

■ At the time the trial court issued its order for judgment notwithstanding the verdict, it also ordered that in the event that the order granting judgment notwithstanding the verdict was vacated, reversed, or set aside on appeal plaintiff's alternative motion for a new trial was also granted. The court's authority, and in fact duty, to rule on the alternative motion is undisputed. Rule 50.02(2) of Rules of Civil Procedure provides that when an alternative motion for judgment notwithstanding the verdict or for a new trial is made, and the court grants the motion for judgment notwithstanding the verdict, it shall at the same time grant or deny the motion for a new trial, but in such case the order on the motion for a new trial shall become effective only if and when the order granting judgment notwithstanding is reversed, vacated, or set aside.

Appellant contends that the order for a new trial is appealable and therefore reviewable because the grounds upon which it was granted were exclusively errors of law. Ordinarily an order granting a motion for a new trial is not appealable unless it is based exclusively upon errors of law occurring at the trial and that fact is stated in the order or in a memorandum of the trial court attached thereto. M. S. A. 605.09(4). Such an order is not appealable if judicial discretion was exercised in granting the order or even if there is the slightest doubt that judicial discretion was exercised. Noren v. Hankee, 241 Minn. 379, 63 N. W. (2d) 43; Von Bank v. Mayer, 239 Minn. 492, 59 N. W. (2d) 307; Schaumburg v. Ludwig, 240 Minn. 128, 60 N. W. (2d) 12. Here the order expressly stated that one of the grounds for granting the new trial was that the verdict of the jury was not justified by the evidence. In Smith v. Illinois Cent. R. Co. 244 Minn. 52, 68 N. W. (2d) 638, we held that an order granting a new trial on that ground was clearly not appealable.

Appellant also contends that the order granting the motion for a new trial is appealable as an order vacating a judgment. Clearly, an order granting a motion for a new trial is appealable if it vacates a judgment. Ayer v. Chicago, M. St. P. & P. R. Co. 189 Minn. 359, 249 N. W. 581; Kruchowski v. St. Paul City Ry. Co. 195 Minn. 537, 263 N. W. 616, 265 N. W. 303, 821.

Rules 58.01 and 58.02 of Rules of Civil Procedure require, in the absence of directions to the contrary, that the clerk after the verdict shall forthwith enter judgment. Subsequent to the verdict here, no judgment was entered and no stay was granted. Although the clerk did not in fact comply with this rule, appellant contends that he should not be deprived of the appealable characteristic of this order as vacating a judgment simply because of the failure on the part of the clerk to enter the judgment pursuant to Rule 58.01.

In the Kruchowski case, although judgment had not been entered, the order of this court directing judgment notwithstanding the verdict be entered was held to be sufficient to allow an appeal from the order granting a new trial entered subsequent to a remand of the case for entry of judgment notwithstanding the verdict. In that case the order

granting a new trial was not based on an alternative motion, whereas in the instant case it was. In the instant case, even assuming judgment had been entered, the order granting judgment notwithstanding the verdict would have vacated the judgment, not the order granting the motion for a new trial.

The order granting the motion is not appealable as an order vacating a judgment solely on the basis that the clerk should have entered the judgment. We do not regard this situation the same as in the Kruchowski case where we directed the entry of judgment.

■ Appellant also contends that even if the order granting the motion for a new trial is not appealable it is reviewable upon his appeal from the judgment entered pursuant to the order granting judgment notwithstanding the verdict. M. S. A. 605.09(1) states that on an appeal from a judgment "the court may review any intermediate order involving the merits or necessarily affecting the judgment appealed from." Without regard to whether the order granting the alternative motion for a new trial constitutes an intermediate order affecting the judgment or involving the merits, it is not reviewable. Our decision reversing the order granting judgment notwithstanding the verdict has the effect of vacating the judgment entered pursuant to that order where the appeal was taken from the order before the judgment was entered. Seagram-Distillers Corp. v. Lang, 230 Minn. 118, 41 N. W. (2d) 429. Since the judgment falls with the reversal of the order upon which it is based, we do not believe the order granting the alternative motion is reviewable on an appeal from a judgment which no longer exists.

Reversed and remanded.