WILLIAM E. DEAN, JR., AND ANOTHER v.
FORREST G. WEISBROD AND ANOTHER.

217 N. W. 2d 739.

April 26, 1974—No. 44257.

38

*Murnane, Murnane, Battis & Conlin* and *Robert W. Murnane,* for appellants.

*Nord, Webster & Brennan, David W. Nord,* and *Joseph H. Rivard,* for respondents.

Heard by Sheran, C. J., and Todd, MacLaughlin, and McRae, JJ., and considered and decided by the court.

GORDON L. MCRAE, JUSTICE.*

This is an appeal from an order of the district court denying defendants' alternative motions for judgment notwithstanding the verdict or for a new trial and from the judgment entered

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

against defendant Forrest G. Weisbrod in favor of plaintiff William E. Dean, Jr., pursuant to the special verdict returned by a jury. Although the parties' wives were also nominally parties, we shall refer to Dean as plaintiff and to Weisbrod as defendant.

In denying defendant's motion for judgment notwithstanding the verdict, the trial court determined that there was sufficient evidence to support the jury's finding of causative negligence on the part of defendant. In denying the motion for a new trial, the court determined that the arguments made by plaintiff's counsel were not so improper and prejudicial as to require a new trial. We affirm the trial court in both aspects of its ruling.

This case involves an accident which occurred on July 28, 1971, on defendant's residential property located in White Bear Lake, Minnesota. At the time of the accident the parties were occupying adjoining homes. Defendant, who was then 65 years of age, had worked in general maintenance, plumbing, carpentry, and electrical work during his adult life. Plaintiff was 26 years of age at the time of the accident and had been employed as an apprentice plumber for several years.

When defendant purchased his home in 1968, there was a flagpole located on the property. The pole consisted of two sections of iron pipe, one of which had an inside diameter of 1 inch and the other an inside diameter of 1½ inches. The sections of pipe were joined by a reducing coupling into which the threaded ends of the two pipes were inserted. The coupling was about 2 inches in length and the inside of both the 1-inch and 1½-inch openings was threaded to receive the threaded ends of the pipe.

Some time after acquiring his property, defendant moved the flagpole to a new location on his lot. In doing so, he disassembled the two sections of iron pipe and removed the threaded end of one pipe from the coupling. Defendant could not recall whether the coupling remained attached to the larger or smaller pipe. While the pole was disassembled, defendant used a wire brush on the exposed threads of the pipe and sanded and painted the coupling and both sections of pipe. The larger pipe was then em-

bedded in concrete which was allowed to set for 3 or 4 days. The smaller pipe, either with or without the coupling attached thereto, was then attached to the embedded pipe. In joining the smaller pipe to the larger one by use of the coupling, defendant had difficulty in getting the threads of the pipe to mesh with the threads of the coupling. However, with the help of a taller man and the use of a pipe wrench, he did obtain what he felt to be a sufficient joinder. As reassembled, the flagpole consisted of the $1\frac{1}{2}$-inch pipe embedded in concrete and extending above the ground about 5 or 6 feet, the reducing coupling, and the 1-inch pipe extending upward for about 10 feet above the coupling.

On two occasions prior to the flagpole's being moved and on one occasion after the move, defendant had done work on the flagpole and in so doing had placed a ladder against the pole to reach its top.

On July 28, 1971, plaintiff returned to his home from work late in the afternoon and was approached by defendant with the request that plaintiff assist defendant in securing release of a flag which had become entangled with a pulley atop the flagpole on defendant's property. Plaintiff agreed to do so after he had completed his evening meal and thereafter did go upon defendant's premises. It was determined that an aluminum extension ladder would be used by plaintiff to reach the top of the pole. The ladder was extended the required distance and was then placed against the flagpole with the bottom of the ladder about 2 feet from the bottom of the pole. Before ascending the ladder plaintiff asked defendant if the latter thought it would hold plaintiff, and defendant responded that he thought so because he had been up there several times. While defendant steadied the ladder, plaintiff climbed up five or six rungs, at which point he was about 6 feet above the ground. The flagpole then broke in an exposed thread of the 1-inch pipe at its point of juncture with the coupling. Plaintiff fell, sustaining serious injuries. Examination of the flagpole after the accident revealed that only 4 of the $9\frac{1}{2}$ threads on the 1-inch pipe had been engaged with the

threads of the coupling. The small end of the coupling had been threaded so that it was not necessary to leave exposed any of the threaded portions of the 1-inch pipe.

The trial court in its instructions defined the duty of defendant in terms of plaintiff being a licensee and submitted the case to the jury in a special verdict. By its verdict the jury found that defendant was negligent, that his negligence was a direct cause of plaintiff's injuries, and that plaintiff was not negligent. Defendant claims that the trial court erred in denying his motion for a directed verdict made during trial and his post-trial motion for judgment notwithstanding the verdict for the reason that there was not sufficient evidence to justify the trial court in submitting to the jury the issue of defendant's negligence.

■ In considering the sufficiency of the evidence on an issue, the same rule is applicable whether the question be raised by motion for a directed verdict or by motion for judgment notwithstanding the verdict. Jacoboski v. Prax, 290 Minn. 218, 187 N. W. 2d 125 (1971) ; Satter v. Turner, 257 Minn. 145, 100 N. W. 2d 660 (1960). In Satter, later overruled insofar as it dealt with an unrelated issue,[1] we state this rule to be as follows:

"A motion for a judgment notwithstanding the verdict must be governed by the same rules which govern the court in passing upon a motion for a directed verdict. See, Rule 50.02(1) of Rules of Civil Procedure; MacKay v. Costigan (7 Cir.) 179 F. (2d) 125. A motion for a directed verdict, which by its very nature accepts the view of the entire evidence most favorable to the adverse party and admits the credibility of the evidence in his favor and all reasonable inferences to be drawn therefrom, should be granted only in those unequivocal cases where, in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where it would be contrary to the law appli-

---

[1] McCormack v. Hankscraft Co. Inc. 278 Minn. 322, 154 N. W. 2d 488 (1967).

cable to the case. Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243." 257 Minn. 155, 100 N. W. 2d 667. See, also, Ford v. Stevens, 280 Minn. 16, 157 N. W. 2d 510 (1968); Lovejoy v. Minneapolis-Moline Power Implement Co. 248 Minn. 319, 79 N. W. 2d 688 (1956).

The approach of the trial court to a motion for judgment notwithstanding the verdict has been otherwise defined in Malmquist v. Leeds, 245 Minn. 130, 134, 71 N. W. 2d 863, 866 (1955), as follows:

"* * * Unless the evidence, which must be viewed in the light most favorable to the verdict, is so clear and conclusive as to preclude a reasonable difference of opinion among fair-minded men, the court should not [substitute] its judgment for that of the jury."

We address ourselves, therefore, to the question of whether or not the jury's finding of causative negligence on the part of defendant is manifestly against the entire evidence or is contrary to the law applicable in the case or if the evidence is so clear and conclusive as to preclude a reasonable difference of opinion among fair-minded men.

The circumstances of this case, involving as it does an express invitation to plaintiff to come upon the premises of defendant for the sole benefit of the latter, would have justified instructions covering the duty of a possessor of land to his invitee. Supornick v. Supornick, 175 Minn. 579, 222 N. W. 275 (1928); Prosser, Torts (4 ed.), § 61. However, the trial court, contrary to plaintiff's present contentions, instructed the jury on the duty of a possessor of land to licensees.[2] No exceptions were taken

_____

[2] The trial court instructed the jury as follows: "Now, a possessor of land owes no duty to a licensee to keep his premises in a safe condition either by inspection or by affirmative care. However, if a possessor of land knows or from facts known to him has reason to know of a dangerous condition on his premises, either artificial or natural, and if the condition involves an unreasonable risk of harm to a licensee and if he

to the instructions as given, and for the purpose of this decision we consider the defendant's duty to be that of licensor to licensee. The court's instructions were in terms of the elements set forth in Restatement, Torts 2d, § 342, which reads:

"A possessor of land is subject to liability for physical harm caused to licensees by a condition on the land if, but only if,

"(a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and

"(b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and

"(c) the licensees do not know or have reason to know of the condition and the risk involved."

This is the law which we have held governs the duty owed by a possessor of land to a licensee in causes of action arising prior to July 14, 1972.[3] Holland v. Hedenstad, 287 Minn. 244, 177 N. W. 2d 784 (1970); Carlson v. Rand, 275 Minn. 272, 146 N. W. 2d 190 (1966); Sandstrom v. The AAD Temple Bldg. Assn. Inc. 267 Minn. 407, 127 N. W. 2d 173 (1964); and Thayer v. Silker, 267 Minn. 268, 126 N. W. 2d 263 (1964).

From the evidence in this case, we believe the jury could have found that the 1-inch pipe was inadequately joined to the coupling and that this condition operated to increase the risk of a

---

should have foreseen that the licensee would not discover or realize the danger, then he has a duty, one, to use reasonable care to make the premises reasonably safe for the licensee, or, two, to use reasonable care to warn the licensee of the danger or risk involved unless the licensee is already aware, or from facts known to him should have been aware, of the condition of the premises and of the risk involved."

[3] In Peterson v. Balach, 294 Minn. 161, 199 N. W. 2d 639 (1972), we abolished the distinction between licensee and invitee in consideration of the duty owed by a possessor of land as to those causes of action arising after July 14, 1972.

break or collapse of the pole. From defendant's testimony regarding the moving of the pole, his disassembling of the pipes, his work in wire-brushing the exposed threading on the pipes, his sanding and painting of the coupling and sections of pipe, and his difficulty in reassembling the pole, the jury could have reasonably inferred that defendant knew, or had reason to know, of the inadequately joined 1-inch pipe and coupling. Particularly is this true in the light of defendant's past work experience. This inference could reasonably have been drawn without regard to whether defendant removed the 1-inch pipe from the coupling in moving his flagpole. Since the condition relating to the joinder of the 1-inch pipe and coupling was for the most part concealed, defendant should have expected that plaintiff would not discover or realize the danger. At that point it was incumbent upon defendant, even though his status be that of licensor, to either make the condition safe or to warn plaintiff, and he did neither. The jury could have found that defendant in fact asked plaintiff to utilize the precise installation on his property which he had reason to know was a trap. Even a licensee has a right to expect more. As this court said in Malmquist v. Leeds, 245 Minn. 130, 139, 71 N. W. 2d 863, 869:

"* * * While a licensee must take the premises as he finds them, the landowner nevertheless owes him the duty of not knowingly exposing him to hidden dangers."

Accordingly we hold that the trial court did not err in denying defendant's motions for a directed verdict or his motion for judgment notwithstanding the verdict for plaintiff.

■ Defendant further contends that he is entitled to a new trial by reason of prejudicial and inflammatory statements made by plaintiff's counsel in his final argument. Defendant directs attention to two portions of the argument. In the first, plaintiff described the act of an octopus emitting ink to hide itself as illustrative of defendant's tactics of obscuring the issues in the

case,[4] and defendant contends this constituted a claim that defendant had attempted to suppress facts. Secondly, defendant points to plaintiff's assertion that if the jury returned any amount less than $10,000 for plaintiff's pain, this would be a great victory for defendant.[5] Defendant claims that this remark suggested to the jury that $10,000 had been offered in settlement of the case.

We do not find that either line of argument made by plaintiff carried the implication now urged by defendant. While we do not approve of either line of argument and particularly that which suggests to a jury that a verdict in any amount less than a stated sum will constitute a victory for defendant, we are not prepared to hold that the trial court abused its discretion in denying the motion for a new trial. Our approach to this aspect of the case is well established and is simply that the granting of a new trial for improper remarks or arguments of counsel is governed by no fixed rules but rests almost wholly within the discretion of the trial court. On appeal this court will reverse the trial court's determination only for a clear abuse of discretion.

---

[4] Plaintiff argued: "* * * We are talking, you will recall, from the testimony—first let me make a couple of comments. We have heard testimony here about the type of ladder, the type of the pads, new or old ladder, which direction it was facing. You have heard testimony here from the stand which has no bearing on the issues here. You will recall in your school days that an octopus when it was excited or frightened wanted to obscure something, himself, he would emit ink. I suggest to you that all the testimony you heard about which way was the ladder facing, whereabouts on the premises was the pole, what kind of pads, this is all ink to obscure the real issues in this case. The real issue we are putting before you here is was Forrest Weisbrod negligent."

[5] Plaintiff argued: "* * * I am going to suggest to you that if you were to award him—now, this is just for the pain and suffering that he went through at that time—I am going to suggest to you that you, if you would return anything less than $10,000.00 for this pain, this experience, that it would be a great—obviously great victory for the defendant in this matter."

Kramer v. Kramer, 282 Minn. 58, 162 N. W. 2d 708 (1968); Connolly v. The Nicollet Hotel, 258 Minn. 405, 104 N. W. 2d 721 (1960); Patton v. Minneapolis St. Ry. Co. 247 Minn. 368, 77 N. W. 2d 433 (1956).

Defendant cites Burmeister v. Minneapolis St. Ry. Co. 185 Minn. 167, 240 N. W. 359 (1932), and Annotation, 29 A. L. R. 2d 996, in support of his argument for a new trial. The Burmeister case is distinguishable in that there the challenged argument involved counsel's stating as established facts evidence which had been specifically excluded by the trial court. The annotation covers cases involving arguments to the effect that an adversary has attempted to suppress facts. As noted, we do not view plaintiff's argument in the present case as charging defendant with suppression of facts—only that he has sought to confuse the issues. In any event, the divergence of opinion in the numerous cases cited in the annotation illustrates that no definite rule can be enunciated. The rulings turn on the particular facts, and in the present case we simply hold that on the record this court cannot say that the trial court clearly abused its discretion.

Affirmed.