Gregory P. MASCHENIK, Appellant,

v.

**PARK NICOLLET MEDICAL CENTER, Respondent.**

No. C4–85–1302.

Court of Appeals of Minnesota.

April 15, 1986.

Robert J. Brenner, Minneapolis, for appellant.

John M. Anderson, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FOLEY and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from an order granting a new trial. The trial court determined that it had erroneously and prejudicially admitted evidence and instructed the jury on the issue of condonation in appellant's wrongful employment discharge claim. We affirm.

## FACTS

Appellant Gregory P. Maschenik was hired by respondent Park Nicollet Medical Center (Medical Center) as a painter in 1977. During his interview for the position Mr. Maschenik inquired about union representation at the hospital, and was advised there was no union but that the hospital did have a grievance procedure. Maschenik knew nothing of how the procedure worked or the circumstances under which an employee could use the process and never received any documents describing the procedure.

The Medical Center had a policy and procedure manual which supervisors and management could use as a working guide in the administration of the hospital. The manual was only distributed to those holding supervisory positions. The manual described a procedure entitled "Breaks", which provided that each employee shall have a thirty minute lunch period that must be taken at the hospital.

Shortly after he began work, Maschenik was assigned the 4:00 p.m. to 12:30 p.m. shift. For three years Maschenik completed his time card by hand. In December, 1980 the Medical Center installed a time clock for maintenance employees to punch. Both before and after installation of the time clock Maschenik consistently left work approximately thirty to forty-five minutes early. Instead of taking his one-half hour lunch break at the hospital, he chose to work a continuous eight-hour period and leave at midnight. He claims other employees did the same thing.

In September, 1980 the policy and procedure manual was amended to provide a grievance procedure, which consisted of a conference between the affected employee and his or her supervisor to correct job related problems before further action was taken.

In the fall of 1980, Maschenik's supervisor and a night supervisor began receiving complaints from other employees that Mas-

chenik was leaving work early. Maschenik's supervisor reminded Maschenik that he was to work until 12:30.

On February 17, 1981, Maschenik's supervisor again spoke to Mr. Maschenik about his early departure from work at approximately 6:00 p.m. in the "service area" of the Medical Center.

Maschenik claims that his supervisor poked him in the breastplate with his finger and that Maschenik lost his temper and responded with profanities, stating he would not work those hours. The two men then went to a private room where Maschenik claimed his supervisor began to shout and swear at him.

Maschenik's supervisor denies touching him, and neither of two witnesses to the incident saw him do it. The supervisor further denies shouting or swearing at Maschenik and claims that it was not until Maschenik began shouting obscenities at him that he raised his own voice in order to be heard.

Maschenik then told his supervisor he was going home and the supervisor responded that if he left, he could stay home and would be fired. Maschenik ran out of the room in tears, shouting obscenities at his supervisor, who followed him immediately to an adjacent stairwell, where Maschenik threatened to throw the supervisor down the stairs, a threat allegedly made out of concern for Maschenik's personal safety. Maschenik admitted that his supervisor did not verbally threaten or physically touch him. Maschenik went to the basement of the Medical Center to retrieve his toolbox. After removing those tools which belonged to the medical center, he returned to the floor where his supervisor and the night supervisor were, made an obscene gesture to them, and left the Medical Center.

The next day Maschenik admitted to the assistant administrator for human resources at the Medical Center that what he had done was wrong, apologized for his actions, and asked for his job back. In a letter to the administrator describing the incident, Maschenik admitted he yelled obscenities and made an obscene gesture to supervisors as he left the building.

The administration, after investigation, upheld the termination of Maschenik's employment based upon Maschenik's insubordination to a supervisor, threatening use of physical force on a supervisor and shouting of obscenities in the Medical Center in an area which could easily have been overheard by patients, employees, and physicians.

A grievance hearing to review the termination was held, and the grievance committee concluded that the termination was justified.

At trial, Maschenik introduced evidence of several incidents involving another employee at the Medical Center. In one of that employee's annual performance reviews was a reference that "at times [the employee] has been subject to outbursts 'which have engendered fear, concern and embarrassment of her fellow workers.'" There was no further evidence offered as to the specific conduct involved with the incidents or specifically whether they involved the shouting of obscenities or threats to supervisors.

That particular employee was terminated, according to Medical Center, solely because of an outburst in the laboratory department in which she threw lab equipment and began shouting obscenities at the lab manager and not because of any prior conduct.

The jury found that the Medical Center had breached a contract of employment with Maschenik by terminating his employment without reasonable cause. Damages of $24,000 were awarded.

The Medical Center moved for judgment notwithstanding the verdict or for a new trial. The trial court denied the Medical Center's motion for judgment notwithstanding the verdict but granted its motion for a new trial, on the ground that it had erroneously and prejudicially admitted evidence and instructed the jury on the issue of condonation. Maschenik appeals from the trial court's order. The Medical Center

served and filed a notice of review, seeking consideration of the trial court's denial of its motion for judgment notwithstanding the verdict.

## ISSUES

1. Did the trial court err in its denial of the Medical Center's motion for judgment notwithstanding the verdict?

2. Did the trial court err in its determination that the doctrine of condonation was not applicable to the present case?

3. Did the trial court err in its determination that it should not instruct the jury on the doctrine of condonation?

## ANALYSIS

1. The Medical Center argues there was no modification of its at-will employment relationship with Maschenik by inclusion of a grievance procedure in the hospital's procedure and policy manual because such a procedure was never disseminated directly to him. Even if an implied contract of employment was created, the Medical Center further argues that no breach occurred because reasonable cause existed to terminate Maschenik's employment. Therefore, the hospital contends, the trial court should have directed a verdict or granted judgment notwithstanding the verdict on the issues of the existence of an implied employment contract between it and Maschenik or breach of that contract, if created.

Motions for directed verdicts are governed by the same standard. *Compare Hanrahan v. Safeway Steel Scaffold Co.*, 233 Minn. 171, 176–77, 46 N.W.2d 243, 246–47 (1951) (standard for directed verdict) *with Lamb v. Jordan*, 333 N.W.2d 852, 855 (Minn.1983) (standard for judgment notwithstanding the verdict). *See also Dean v. Weisbrod*, 300 Minn. 37, 41, 217 N.W.2d 739, 742 (1974) (motion for directed verdict must be governed by same rules that govern a motion for judgment notwithstanding the verdict). In both cases the court must view the evidence as a whole in the light most favorable to the non-moving party. *See Lamb*, 333 N.W.2d at 855; *Hanrahan*, 233 Minn. at 176, 46 N.W.2d at 247. Such motions should be granted "only in those unequivocal cases where, in the light of the evidence as a whole, it would clearly be the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence, or where it would be contrary to the law applicable to the case." *Dean*, 300 Minn. at 41–42, 217 N.W.2d at 742 (citations omitted).

■ The evidence here is sufficient to submit to and support a jury's determination that an implied contract of employment was created.[1]

Although it is true that Maschenik never received a written copy of the grievance procedure, the record indicates that he was told of the procedure by a Medical Center personnel employee during his interview and relied upon her representation when deciding to accept the offered position.

■ The evidence is also sufficient to support the jury's determination that reasonable grounds did not exist to terminate Maschenik's employment.

The issue of an implied contract of employment and breach thereof is a factual one which in this case rests on the credibility of Maschenik's testimony as against that offered by his supervisor. In determining whether a judgment notwithstanding the verdict should be granted, a reviewing court "may not weigh the evidence or judge the credibility of the witnesses." *Lamb*, 333 N.W.2d at 855. The fact that the jury apparently believed Maschenik's version of the incident and discounted that of his supervisor's is not a proper matter for inquiry by this court on review.

2. Maschenik next maintains the trial court erred in its decision to grant the Medical Center's motion for a new trial. Evidence of the Medical Center's dealings

1. We note on our review of the trial record that the form of the special interrogatory verdict is incomplete. Before the question is posed of whether the employment contract does or does not include a reasonable grounds provision, as was done here, the question must first be asked whether an implied contract of employment exists at all.

with another employee was admitted through the testimony of a hospital administrator. It was Maschenik's theory of the case that the Medical Center did not have reasonable cause to terminate him because in situations involving other employees where similar misconduct occurred, the hospital did not take the identical action of termination.

Maschenik relies upon the Minnesota Supreme Court's decision in *Bautch v. Red Owl Stores, Inc.*, 278 N.W.2d 328 (Minn. 1979), to support his contention that the doctrine of condonation is applicable here. In *Bautch*, the employer posted a written notice providing that all employees were required to purchase all food and beverages. *Bautch*, 278 N.W.2d at 329. Despite this notice, the plaintiff and other employees, including the manager, regularly consumed various items of food without paying for them. *Id.* at 330. When a new manager was hired, the plaintiff was fired for violating the store's posted notice. *Id.* The supreme court held that evidence of the employer's prior conduct could be considered as condonation of the employee's violation of the company policy. *Id.* at 331. In so holding, the court stated:

An employer's condonation of an employee's wrongful conduct is a mitigating factor which may cause the employer to waive its right to discharge the employee on the basis of such misconduct. The jury was therefore entitled to consider the fact that Red Owl had never enforced the policy and that management had acquiesced in the violation of the express policy set forth in the 5-inch by 7-inch notice.

*Id.*

*Bautch* does not apply to the present case for several reasons. The doctrine of condonation, as stated in *Bautch*, describes a waiver by the employer of an employee's continuing misconduct, where such misconduct *by that employee* has gone unpunished in the past.

■ There is no indication here that Maschenik knew of the Medical Center's conduct with respect to any other employee exhibiting similar acts of misconduct. Nor had Maschenik himself ever been the subject of, or even heard of anyone else who was the subject of, alleged lax enforcement of the Medical Center's policy against disruptive conduct.

■ In addition, although the conduct described in *Bautch* was serious, it pales in comparison to the conduct involved here. Shouting obscenities, threatening physical violence, and making obscene gestures is not the type of conduct which any employer could be said to have condoned.

■ Finally, *Bautch* involved a continuous course of conduct, while here there was only one isolated incident. A single incident in which the employee violated a policy without being discharged should not constitute condonation of that violation. If it did, an employer who on one occasion did not terminate the employment of an employee would be barred from discharging other employees for engaging in a similar prohibited activity.

■ The determination of whether evidence is relevant is committed to the sound discretion of the trial court. *See Renne v. Gustafson*, 292 Minn. 218, 223, 194 N.W.2d 267, 270 (1972). Here the trial court properly exercised its discretion in excluding the evidence regarding another employee's conduct.

■ 3. A party is entitled to an instruction on its theory of the case only if there is evidence to support it. *Lauer v. Loecken*, 295 Minn. 345, 347, 204 N.W.2d 817, 818 (1973). Here the trial court instructed the jury that "a violation of a policy on firing, if condoned by management, may no longer constitute reasonable grounds for termination." Since the only evidence presented by Maschenik on the doctrine of condonation was that concerning the other employee, which we have determined was inadmissible, the instruction should not have been given.

## DECISION

The trial court's order granting a new trial is affirmed.

Affirmed.