*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAVID LEE JAMERSON,

      Defendant-Appellant.

UNPUBLISHED
March 18, 2021

Nos. 349535; 350541
Marquette Circuit Court
LC Nos. 18-056649-FH; 18-
      056650-FH

Before: MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant challenges his convictions following a jury trial of three counts of assault of a prison employee, MCL 750.197c. For each count, he was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 4 to 10 years' imprisonment, concurrent to one another but consecutive to his then-existing term of incarceration. We affirm.

## I. BACKGROUND

Defendant had been incarcerated since 1991, and in December 2016 was housed in a single cell. Defendant's cell was in a small vestibule, sectioned off from the rest of the gallery by a glass wall. To access defendant, correctional officers (COs) had to open the door to the vestibule and open the door of defendant's barred cell.

Docket No. 350541 relates to case no. 18-056650-FH, in which defendant was originally charged with two counts of assaulting a prison employee, one against CO Stacy and one against CO Milliner. The charge against Milliner was dismissed when he was unavailable to testify at defendant's preliminary examination. However, he was permitted to testified at trial pursuant to MRE 404(b) to show that defendant had a common scheme for assaulting COs.

---

[1] *People v Jamerson*, unpublished order of the Court of Appeals, entered September 23, 2019 (Docket Nos. 349535; 350541).

Stacy testified that on December 7, 2016, he was distributing food trays to inmates' cells. He testified that when he entered defendant's vestibule to place a tray in the food slot of the cell, defendant was seated on his bunk. Stacy testified that he heard defendant's feet hit the ground, so he turned to back out of the vestibule and saw defendant coming at him with his hands folded by his side. Stacy testified that defendant then threw feces, urine, and blood at him, hitting him in the eyes, ears, nose, and mouth.

Milliner testified that on December 8, 2016, he noticed that defendant had covered the bars of his cell with blankets, sheets, and clothing, preventing the COs from seeing into the cell. Milliner testified that he attempted to make verbal contact with defendant multiple times, but defendant did not respond. Milliner testified that he entered the vestibule and used a mop handle to try to poke down some of the sheets from the bars. He explained that he tried to stay as far away from the bars as possible because defendant had "a history of throwing feces and urine on people." Milliner stated that as he poked down part of the sheets, defendant threw a three-foot long spear at him made of tightly-rolled paper with a tip made from a foil bag. Milliner explained that the weapon hit him in the face, scratched his cornea, and broke his nose. He testified that he saw the spear come from defendant's cell and that he heard defendant say, "I got your ass," as soon as he was hit.

Later that day, an "extraction team" consisting of five COs was sent to remove defendant from his cell. This incident gave rise to the four charges of assaulting a prison employee at issue in Docket No. 349535 and case no. 8-056649-FH. CO Cody led the team that also consisted of COs Pelkola, Cole, Verville and Roberts. Cody testified that he gave defendant multiple verbal commands to remove the sheets and that defendant did not comply. Pelkola testified that he used a mop handle to attempt to knock the sheets down, and as soon as he knocked one down, an unknown liquid came out of defendant's cell. The COs who testified at trial stated that the liquid splashed on them, and some testified that it smelled liked urine. Cody testified that after multiple orders, defendant then threw a second cup of liquid at them. Eventually, Cole deployed a pepper-spray-like chemical agent in defendant's cell and defendant then complied with the COs orders.

Defendant testified that he did not throw anything at Stacy on December 7, 2016. He stated he did not use the paper spear to attack Milliner on December 8, 2016; and that he did not throw urine out of his cell at the extraction team; he just threw a cup of water to try to delay the COs and "just to warn 'em don't come in here and mess with me." The jury found defendant guilty of assault of a prison employee against Pelkola, Cody, and Stacy, but not guilty of assault against Cole and Verville.

## II. ANALYSIS

### A. MRE 404(B)

Defendant first argues that impermissible character evidence was admitted at trial.[2] Other-acts evidence is governed by MRE 404(b), which states in part:

> (1) Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Other-acts evidence is admissible if the following circumstances are met:

> First, that the evidence be offered for a proper purpose under Rule 404(b); second, that it be relevant under Rule 402 as enforced through Rule 104(b); third, that the probative value of the evidence is not substantially outweighed by unfair prejudice; fourth, that the trial court may, upon request, provide a limiting instruction to the jury. [*People v VanderVliet*, 444 Mich 52, 55; 508 NW2d 114 (1993).]

As noted, the trial court permitted Milliner to testify to the alleged assault against him pursuant to MRE 404(b). Defendant does not challenge that decision, but argues that the trial court abused its discretion by allowing Milliner to testify that defendant had "a history of throwing feces and urine on people." Specifically, Milliner testified:

> *Q*. Did you then, in fact, do that? Did you go into his cell to try to remove the sheets?
>
> *A*. Yes.
>
> *Q*. And let me clarify, did you enter the vestibule portion of his cell?

---

[2] We review for abuse of discretion a trial court's decision on whether to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). As will be noted, several of defendant's arguments were not preserved at trial. We review unpreserved errors for plain error affecting substantial rights. See *People v Jones*, 468 Mich 345, 356; 622 NW2d 376 (2003). To avoid forfeiture of the claim, a defendant must show that "(1) [an] error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*. at 355. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Jones*, 468 Mich at 356.

*A.* No. I tried to stay as far out of it as I could. Reach in and move what I could.

*Q.* Why did you try to stay as far out as you could?

*A.* [Defendant] has a history of throwing feces and urine on people.

There was no objection to this testimony, and therefore our review is for plain error affecting substantial rights. See *People v Jones*, 468 Mich 345, 356; 622 NW2d 376 (2003). On appeal, the prosecutor does not argue that this statement was admitted for a proper purpose under MRE 404(b), but maintains that the statement, even if erroneously admitted, was not unduly prejudicial. We agree. There is no indication that the outcome of defendant's trial would have been different absent Milliner's comment. The jury may have assumed that Milliner's comment that defendant had a history of throwing urine and feces could have been a reference to his behavior toward CO Stacy the previous day, which had already been introduced by Stacy's testimony. There was also ample evidence supporting the convictions. In addition to the COs' testimony, a video of all three incidents was admitted into evidence and played for the jury. Finally, the fact that the jury acquitted defendant on several of the charges showed that they considered the evidence fairly and that defendant was not substantially prejudiced by the testimony that he had a history of throwing feces and urine at COs. See *Skilling v United States*, 561 US 358, 383-384; 130 S Ct 2896; 177 L Ed 2d 619 (2010), quoting *US v Arzola-Amaya*, 867 F2d 1504, 1514 (CA 5, 1989) (" 'The jury's ability to discern a failure of proof of guilt of some of the alleged crimes indicates a fair minded consideration of the issues . . . .' "). Therefore, even if admission of Milliner's statement were plain error, the error did not affect defendant's substantial rights.

Next, defendant argues that the trial court abused its discretion by admitting evidence of the length of his prior sentences. To convict a defendant of assault of a prison employee under MCL 750.197c, the prosecutor must prove that the defendant was lawfully incarcerated at the time of the assault. See *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007). The prosecutor called the prison records supervisor to testify merely that defendant was lawfully incarcerated at the time of the offenses. On cross-examination, the records supervisor testified that defendant was serving four active sentences at the time of the offense, and upon additional questioning agreed that one sentence was for a 1991 conviction and had a 20-year maximum term of incarceration. The clear implication of defense's counsel's questioning was that defendant was not lawfully incarcerated in 2016. Thus, on redirect, the prosecutor established that two of defendant's active sentences were issued in 2014, and over defendant's objection, the trial court allowed the prison records supervisor to testify that the length of sentence for the convictions was 42 months to 15 years' imprisonment and 42 months to 50 years' imprisonment, respectively. We disagree with defendant's assertion that this testimony was introduced to show his character for committing crimes, as its purpose was plainly to establish that defendant was lawfully incarcerated at the time of the alleged assaults. We would agree with defendant that the testimony would be barred by MRE 403 as unduly prejudicial had the prosecutor attempted to elicit this information on direct examination; however, defense counsel effectively opened the door to the length of defendant's incarcerations through his cross-examination of the records supervisor. The line of questioning relating to the 1991 conviction and sentence made the length of defendant's active sentences relevant. Under the circumstances of this case, the trial court did not abuse its discretion by allowing the objected-to testimony.

-4-

Defendant argues that two other statements made during testimony were inadmissible, but the trial court sustained defense counsel's objection to each statement. The first statement that defendant argues was inadmissible is Stacy's testimony that the officers knew about defendant's "assaultive behavior." The trial court sustained defense counsel's objection, adding that "the jury should disregard any evidence of other incidents not connected to this." The second statement that defendant argues was inadmissible is the prosecutor's mention of defendant's 323 misconducts in prison. During his testimony, defendant stated that he "never assaulted" staff at Marquette Prison or anywhere else. On cross-examination, the prosecutor attempted to impeach defendant by asking defendant whether he had 323 misconducts since his initial incarceration. Defense counsel objected, arguing that not all the misconducts necessarily had to do with assaultive behavior and so were not relevant for impeachment purposes. The trial court agreed with defense counsel and sustained the objection although the court allowed the prosecutor to ask defendant whether any of the misconducts were for assaulting a CO. Upon further questioning, defendant maintained that he never assaulted a CO, and after another objection, the prosecutor moved on to a different line of questioning.

In sum, because these contested statements were not admitted as evidence, defendant cannot argue that the trial court abused its discretion by admitting them, and so there is no claimed error for us to review.

Finally, defense counsel argues that the prosecutor's comment in closing argument that defendant had an "assaultive disposition" was inadmissible. The prosecutor stated:

> The defendant testified that Officer Milliner poked him in the face, very forcefully, with this mop or this broom handle. Well let me ask you, why would he do that? Why would Officer Milliner, who testified that he actively tried to avoid the defendant, why would he put himself in the position to be retaliated against by the defendant who has an assaultive disposition. Why would he want to do that? Why would he want to provoke the defendant in that manner?

Defendant did not object to this statement at trial, and he does not claim prosecutorial misconduct on appeal. Further, viewed in context, the prosecutor was not asking the jury to convict defendant because he had an assaultive disposition. Rather, the prosecutor was making an argument as to the believability of defendant's testimony regarding the incident with Milliner. And at the close of trial, the court specifically instructed the jury that it could only base its decision on properly admitted evidence. The court instructed that neither statements made by the prosecutor nor statements that were excluded or stricken by an objection were evidence. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). For these reasons, the prosecutor's statement in closing argument was not plain error warranting reversal.

## B. INEFFECTIVE ASSISTANCE

Defendant next argues that his trial counsel was ineffective for failing to object to Milliner's testimony regarding defendant's history of throwing feces and urine on people. We disagree.[3]

To prove counsel was ineffective, defendant must satisfy the test set out in *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984):

> First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011) (citations omitted).]

For the reasons already discussed, even assuming that the failure to object Milliner's testimony was professional error, defendant has not shown that but for the error, a different result would have been reasonably probable. The jury heard testimony from Stacy that defendant threw urine and feces at him; the prosecutor presented ample evidence supporting the convicted charges; and the jury acquitted defendant on two charges. Accordingly, defendant has not shown he received constitutionally ineffective assistance of counsel under *Strickland*.

## C. JURY INSTRUCTION

Finally, defendant argues that the trial court erred by failing to give Model Criminal Jury Instruction 5.11 regarding the reliability of police officer testimony. We find no plain error on this unpreserved issue.[4]

Defendant argues that the trial court erred by failing to provide M Crim JI 5.11 to the jury, which states: "You have heard testimony from [a witness who is a police officer / witnesses who

---

[3] Ineffective-assistance claims are mixed questions of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's findings of fact for clear error and reviews questions of law de novo. *Id.* Defendant did not preserve this argument by moving for a new trial or an evidentiary hearing. See *People v Abcumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369); slip op at 8; *People v Sabin*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). "Where claims of ineffective assistance of counsel have not been preserved, our review is limited to errors apparent on the record." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

[4] "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant did not request that the trial court include M Crim JI 5.11 or object to its absence below. Therefore, this issue is unpreserved. We review unpreserved errors for plain error affecting substantial rights. See *Jones*, 468 Mich at 356.

are police officers]. That testimony is to be judged by the same standards you use to evaluate the testimony of any other witness." Defendant contends that the instruction should have been given because the jury likely gave the COs' testimony undue credit because of their status as law enforcement officers. Had that argument been raised at trial, we expect that the trial court would have considered giving a modified instruction pertaining to COs. But because the instruction does not apply to COs on its face, the trial court did not have a duty to sua sponte give a modified version of the instruction. And given that the jury acquitted defendant of the charges against two COs, there is no indication that the jury was unduly swayed by the COs' testimony.

Affirmed.


/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola

-7-