*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1978**

Anil Ramkissoon
as assignee of David Olson,
Appellant,

vs.

Western National Mutual Insurance,
Respondent

**Filed August 17, 2015
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CV-13-17385

Charles D. Slane, Jennifer E. Olson, TSR Injury Law, Bloomington, Minnesota (for appellant)

John M. Bjorkman, Paula Duggan Vraa, Jennifer L. Young, Larson King, LLP, St. Paul, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Connolly, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Nick Ramkissoon, then age 14, was injured while operating an uninsured ATV at a friend's lake home property. His father, appellant Anil Ramkissoon, executed a *Miller-*

*Shugart* agreement[1] with one of the owners of the lake home property to pursue a claim under the homeowner's insurance policy, and then sued the insurer, respondent Western National Mutual Insurance Company. Upon cross motions for summary judgment, the district court granted judgment in favor of Western National. Ramkissoon appeals, arguing that the policy's plain language covers his son's accident and that the *Miller-Shugart* agreement with the homeowner was reasonable. Because the plain language of the homeowner's policy does not cover liability arising from the ATV accident, we affirm.

**FACTS**

This case concerns whether liability coverage exists under a homeowner's insurance policy for injuries arising from an ATV accident that occurred at a separate lake home property in Crosby. The facts underlying this tragic accident are not in dispute. In May 2011, Nick Ramkissoon was driving an ATV when he lost control around a turn, was thrown into a tree, and suffered serious injuries. The accident occurred at the lake home property of Nick Ramkissoon's friend.

The friend's father, David Olson, shares ownership of the lake home property with his three siblings. James Olson, David Olson's brother, is part owner of the lake home

---

[1] "A *Miller-Shugart* agreement is an agreement in which one party admits liability and consents to having a judgment entered against him on the express condition that the other party will satisfy the judgment only out of proceeds from the first party's insurer instead of proceeding against the first party personally." *Chalmers v. Kanawyer*, 544 N.W.2d 795, 796 n.1 (Minn. App. 1996) (citing *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982)).

property and handles all its taxes and bills. All four Olson siblings pay an equal share of the expenses associated with the property.

In 1998, James Olson bought two ATVs with his credit card for the lake home property. The Olson siblings split the cost of the ATVs equally and reimbursed James Olson for their portion. The ATVs are stored at the lake home property, and any of the four siblings can use them at any time without seeking permission from each other. The siblings also share the maintenance and repair costs for the ATVs. James Olson registered the ATVs with the Minnesota Department of Natural Resources. The siblings also split the cost of registration, and every three years, James Olson re-registers the ATVs in his name using joint funds.

Following the accident, Nick Ramkissoon and his parents threatened to sue David Olson. David Olson then sought coverage for the accident under his homeowner's policy and umbrella policy that cover his primary home in Crystal because neither the lake home property nor the ATVs were insured.[2]

David Olson's homeowner's policy had the following liability coverage:

> **Coverage L** -- **Personal Liability** -- "We" pay, up to "our" "limit", all sums for which an "insured" is liable by law because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies. "We" will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damage" not excluded under this coverage. "We" may make investigations and settle claims or suits that "we" decide are appropriate. "We" do not have to provide a defense after "we" have paid an amount equal to "our" "limit" as a result of judgment or written settlement.

---

[2] The parties agreed that David Olson's personal umbrella policy only provides liability coverage if his homeowner's policy provides coverage.

3

The following exclusion applied to the homeowner's liability coverage:

**EXCLUSIONS THAT APPLY TO LIABILITY COVERAGES**
***
**1. Exclusions That Apply to Coverages L and M** -- This policy does not apply to:
***
c. "bodily injury" or "property damage" which results from the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading, or unloading of "motorized vehicles", trailers, or watercraft owned or operated by or rented or loaned to an "insured". However, "we" do pay:
***
2) if coverage is provided by an Incidental Motorized Vehicle or Watercraft Coverage.

The homeowner's policy also provided limited incidental liability coverage for use of a motorized vehicle that is not owned by the insured:

**INCIDENTAL LIABILITY COVERAGES**
***
5. Motorized Vehicles -- "We" pay for the "bodily injury" or the "property damage" which:
***
c. results from an "insured's" use of a "recreational motor vehicle" which is not owned by an "insured."

On December 27, 2011, Western National sent David Olson a letter denying coverage because the injury did not result from an "'insured's' use of the ATV." In the letter, when briefly describing its understanding of the background facts, Western National stated that "[t]he ATV is owned by your brother, James Olson."

After Western National denied coverage, Ramkissoon agreed not to pursue a claim against David Olson. Instead, Ramkissoon and David Olson entered into a *Miller-*

4

*Shugart* settlement agreement. In the agreement, David Olson stipulated to an entry of liability by default, and the parties agreed that an arbitrator would decide the appropriate amount of damages. This agreement also allowed Ramkissoon to step into David Olson's shoes and sue Western National for coverage. After reviewing the medical records and bills and hearing testimony from Nick Ramkissoon and his parents, the arbitrator concluded that Nick Ramkissoon had sustained $1,287,373.40 in damages. Ramkissoon then moved the district court to confirm the *Miller-Shugart* settlement and enter judgment against David Olson. Western National did not participate in the *Miller-Shugart* settlement agreement, the arbitration, or the subsequent district court proceeding.

On September 24, 2013, Ramkissoon filed a declaratory action in district court, seeking a declaration that David Olson's umbrella policy and homeowner's policy covered Nick Ramkissoon's injuries. Both parties moved for summary judgment.

In a thorough and well-reasoned opinion, the district court granted summary judgment in favor of Western National, noting that the dispute centered on the Incidental Motorized Vehicle Coverage provision in David Olson's homeowner's policy. Based on the plain language of this provision, the district court concluded that David Olson "owned" the ATV and did not "use" the ATV and therefore his homeowner's policy did not cover the accident.

The district court also concluded that the *Miller-Shugart* settlement agreement was "unreasonable as a matter of law because [it] did not take into account liability issues or the risks inherent in going to trial." Ramkissoon appealed.

**D E C I S I O N**

On an appeal from summary judgment, this court determines whether any genuine issue of material fact exists and whether the district court erred in its application of the law. *Finn v. Alliance Bank*, 860 N.W.2d 638, 655 (Minn. 2015). The interpretation of an insurance policy presents a question of law that this court reviews de novo. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013).

"When terms or phrases in an insurance policy are not specifically defined, they must be given their plain, ordinary, or popular meaning." *Mattson Ridge, LLC v. Clear Rock Title, LLP*, 824 N.W.2d 622, 632 (Minn. 2012) (quotation omitted). Ambiguity exists only when the policy language is susceptible to more than one reasonable interpretation. *Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 227 (Minn. 1996). We construe ambiguous language in favor of providing coverage for an insured. *Midwest Family Mut. Ins. Co.*, 831 N.W.2d at 636. "But we will not read an ambiguity into the plain language of a policy in order to provide coverage." *Eng'g & Constr. Innovations, Inc. v. L.H. Bolduc Co., Inc.*, 825 N.W.2d 695, 705 (Minn. 2013) (quotation omitted).

## I.    The Homeowner's Policy

The parties' dispute focuses on the interpretation of the words "use" and "own" in the Incidental Motorized Vehicle Coverage provision of David Olson's homeowner's policy. This provision covers bodily injuries that result from an insured's use of a recreational motor vehicle that the insured does not own. To show that David Olson's

6

homeowner's policy covers the accident, Ramkissoon must show that David Olson did not own the ATV and that he was using it when the accident occurred.

As a threshold issue, the parties do not dispute that David Olson is an "insured" within the meaning of the policy and that ATVs are "recreational motor vehicles." Ramkissoon first argues that David Olson did not own the ATV because he lacked the ability to convey it and was not the registered owner with the department of natural resources. Ramkissoon further contends that the word "own" is ambiguous and therefore should be construed in favor of awarding benefits. After carefully reviewing the record, we disagree.

David Olson's homeowner's policy does not define "own." Accordingly, we turn to the plain, ordinary, or popular meaning of the word. *See Mattson Ridge, LLC*, 824 N.W.2d at 632. "Owner" is defined as "[o]ne who has the right to possess, use, and convey something; a person in whom one or more interests are vested. An owner may have complete property in the thing or may have parted with some interests in it." *Black's Law Dictionary* 1214 (9th ed. 2009).

Here, David Olson testified that he and his siblings shared ownership of the ATVs. He stated that the four Olson siblings split the cost of the ATVs (including purchase, repair, and maintenance costs), all had unrestricted access to them (the ATVs and keys were kept exclusively at the lake home property), and any sibling could use the ATVs at any time without permission from the others. James Olson also testified that the four Olson siblings shared the ATV, stating, "[I]t's jointly owned." He further testified that the family, as a whole, shares the cost of registering the ATVs. Because David Olson

7

shared the cost of purchase, repair, maintenance, and registration of the ATVs, had unfettered access to them, and the ATVs were stored on a lake home property that David Olson owned with his siblings, we conclude that he "owned" the ATV at issue here.

Ramkissoon contends that David Olson could not have owned the ATV because he lacked an essential right of ownership: the ability to convey. But an owner may have a complete or *partial* interest in a thing. *See Black's Law Dictionary* 1214; *see also Mertes v. Estate of King*, 501 N.W.2d 660, 665 (Minn. App. 1993) (concluding that a plaintiff jointly owned a set of five paintings with her relative). Because David Olson's ownership right to the ATV is partial, his ability to convey it is subject to the ownership interests of his siblings. Nothing prevents David Olson, with agreement from his three siblings, from selling the ATV.

Ramkissoon further contends that David Olson could not have owned the ATV because his brother was the registered owner with the department of natural resources. Contrary to Ramkissoon's argument, registration of an ATV with the department of natural resources is not conclusive evidence of ownership. Unlike other laws governing motor vehicle registration, the statute governing ATV registration does not create prima facie evidence of ownership. *Compare* Minn. Stat. § 168A.05, subd. 6 (2014) (stating that a motor vehicle's certificate of title is prima facie evidence of the facts that appear on it, including ownership), *with* Minn. Stat. § 84.922 (2014) (lacking any reference to ATV registration as prima facie evidence of ownership).

In fact, the statute governing registration of an ATV defines an "owner" quite broadly. An "owner" is "a person, other than a person with a security interest, having a

8

property interest in *or* title to an all-terrain vehicle and entitled to the use and possession of the vehicle." Minn. Stat. § 84.92, subd. 5 (2014) (emphasis added). David Olson satisfies this definition because his contribution to the purchase, repair, and maintenance costs gave him a property interest in the ATVs, the ATVs are permanently stored at the lake property that he owns with his three siblings, and he can use them at any time.

Ramkissoon argues that David Olson had, at most, a license to use the ATVs. A license is "[a] permission, usu[ally] revocable, to commit some act that would otherwise be unlawful." *Black's Law Dictionary* 1002. Here, David Olson's rights to use and possess the ATVs were those of an owner: he did not require permission to use the ATVs and his rights to use and possess them were not revocable.

Ramkissoon further contends that Western National's letter to David Olson refusing coverage shows that the word "own" is ambiguous. In the letter, Western National stated that "[t]he ATV is owned by your brother, James Olson." This letter, however, does not change the meaning of "own" or create ambiguity in the word: it merely shows that Western National's conclusion regarding ownership was based on incomplete information about the relevant facts. Despite this early statement, the record here shows, as a matter of law, that David Olson owned the ATV within the meaning of his homeowner's policy.

Given the joint ownership of the ATV, the Incidental Motorized Vehicle Coverage provision that covers bodily injuries that result "from an 'insured's' use of a 'recreational motor vehicle' which is not owned by an 'insured'" simply does not apply. Because David Olson owned the ATV, we need not determine whether he was "using" the ATV at

9

the time of the accident, another requirement for insurance coverage to be available. And because we conclude as a matter of law that no coverage exists under David Olson's homeowner's policy for Nick Ramkissoon's injuries, we need not address whether the *Miller-Shugart* agreement was reasonable.

## II. Burden of Proof

When an insured brings an action to determine insurance coverage, the insured bears the initial burden to demonstrate coverage. *Midwest Family Mut. Ins. Co*, 831 N.W.2d at 636. The burden then shifts to the insurer to show that the policy contains an exclusion to coverage. *Id.* "[O]nce the insurer shows the application of an exclusion clause, the burden of proof shifts back to the insured because the exception to the exclusion restores coverage for which the insured bears the burden of proof." *Id.* (alteration in original) (quotations omitted).

Ramkissoon contends that the district court erred in applying this burden-shifting framework. We disagree. In any event, given the record here—cross motions for summary judgment concerning a legal issue of policy interpretation and no disputed facts—any error concerning burden-shifting does not affect our ultimate legal conclusion. Because the insurance policy unambiguously defines ownership and David Olson owned the ATV at issue here, the homeowner's policy does not cover Nick Ramkisson's accident and serious injuries.

**Affirmed.**